**Antonio MORALES, Plaintiff–Appellant,**

v.

**QUEMETCO, INC., Defendant–Appellee.**

No. 01–3096.

United States Court of Appeals, Seventh Circuit.

Argued June 12, 2002.

Decided July 31, 2002.

Before MANION, ROVNER, and
CLAIRE WILLIAMS, Circuit Judges.

## ORDER

Antonio Morales, who is Hispanic, filed a discrimination suit under Title VII, alleging that Quemetco discharged him because of his race. The district court granted summary judgment for Quemetco, concluding that Morales failed to offer sufficient evidence of discrimination under the direct and indirect methods of proof. We conclude, however, that Morales offered sufficient evidence of discrimination under the indirect method and therefore remand for further proceedings.

In 1988 Morales began working as a welder for Quemetco, which processes and recycles lead, and was discharged in August 1998 based on the following events. On August 5, 1998, Quemetco held a mandatory company meeting, for which employees were paid and at which attendance was taken. During the two-hour meeting, Morales and a fellow employee, Joseph Burdine (who is white), went to the parking lot to smoke. After about fifteen to twenty minutes, Morales and Burdine attempted to return to the meeting but learned from other employees as they were leaving the room that the meeting had adjourned.

The next day, George Rezabek, plant manager and vice-president of Quemetco, told Morales that he was fired, purportedly because he had violated Quemetco's Attendance Control and Time Card Regulations. According to those regulations, an employee is prohibited from leaving work before the end of a scheduled shift without permission. If an employee violates this rule two times within a one-year period, the regulations call for the employee's termination. Because Morales had violated this rule back in September 1997, this mandatory meeting incident amounted to a second violation.

Although the precise date is not clear from the record, more than a week after

the August 5 meeting, Burdine told Ron Fries, president of Local 1999 of the United Steel Workers of America, that he, like Morales, had left the meeting to smoke in the parking lot and that when he attempted to return the meeting had adjourned. Fries told Burdine that he should report this information at a September 3 union grievance meeting that had been scheduled regarding Morales's discharge. Although Burdine had also been disciplined once before for leaving work early (and therefore also should have faced termination for leaving the meeting), Fries told him that he could not be terminated because the collective bargaining agreement prohibited Quemetco from disciplining an employee more than seven days after the violation.

At Morales's September 3 grievance meeting, Burdine stated that he had left the August 5 meeting and that when he and Morales attempted to return other employees told them the meeting was over. Based on Burdine's statement, Rezabek says that he decided to terminate Burdine.

On September 10 Rezabek met with Brian Vickrey, vice-president of Local 1999, and told Vickrey that Burdine would be terminated if he left the meeting with Morales. Vickrey states that during this meeting, Rezabek told him "that he would have to write ... Burdine up which would lead to his termination if he 'walked out of the meeting too, I mean how does it look if I fired a Mexican and no one else got disciplined."' According to Vickrey, Rezabek also stated something to the effect that " 'I didn't say this, but I don't want to fire [Burdine],' and if [Burdine] were to change his story then all he would be guilty of was lying to cover for a co-worker and that would not result in his termination."

On September 14, Rezabek met with Burdine, Vickrey, and other members of Quemetco's management. At this meeting, Donna Sylvester, Quemetco's human resource manager, said that she saw Burdine leave the meeting but subsequently return. Rezabek told Burdine that he would be fired if he left the meeting and failed to return, and then asked Burdine if he had returned as Sylvester stated. Burdine refused to answer the question and asked for some time to think about it.

After the meeting, Local 1999 informed Burdine that, contrary to Fries's earlier advice, he could in fact be terminated under the collective bargaining agreement because Quemetco did not learn that he had left the August 5 meeting until the September 3 grievance meeting. The next day Burdine met with Rezabek and agreed with Sylvester's statement that he had returned to the meeting. Consequently, Rezabek did not terminate Burdine but instead "counseled" him for lying.

In January 1999 Quemetco agreed to reinstate Morales without backpay, and in January 2000 Morales filed this discrimination suit, alleging that Quemetco discharged him because of his race. Quemetco moved for summary judgment, asserting that it discharged Morales for twice leaving work early in a one-year period in violation of its rules. In opposing Quemetco's motion for summary judgment, Morales attempted to prove discrimination under the direct and indirect methods of proof. The district court rejected both theories and entered summary judgment for Quemetco.

■ On appeal Morales first argues that the district court erred in concluding that he failed to offer direct evidence of discrimination. As direct evidence, Morales specifically relied on Rezabek's statement to Vickrey that he would terminate Burdine "if he 'walked out of the meeting too, I mean how does it look if I fired a Mexican and no one else got disciplined."' We

agree with the district court that this statement is not direct evidence of discrimination. Rezabek's statement does not speak directly to the issue of discriminatory intent, *see Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 714–15 (7th Cir.1999); *Cowan v. Glenbrook Sec. Servs., Inc.*, 123 F.3d 438, 443 (7th Cir.1997); instead, it merely shows that Rezabek was aware that his decision to fire Morales might expose Quemetco to liability under the anti-discrimination laws, *see Partington v. Broyhill Furniture Indus., Inc.*, 999 F.2d 269, 271 (7th Cir.1993).

■ Morales next argues that the district court erred in concluding that he failed to offer sufficient indirect evidence of discrimination. Before moving to what appears to be the primary point of contention on appeal–pretext–we first address Quemetco's assertion that Morales did not prove a prima facie case of discrimination. In particular, Quemetco argues that Morales did not satisfy the fourth element of the prima facie case–he failed to show that similarly situated employees outside the protected class were treated more favorably. *See Curry v. Menard, Inc.*, 270 F.3d 473, 477 (7th Cir.2001).

The district court properly concluded that Morales met the fourth element of the prima facie case. The court wrote, "[Morales and Burdine] both engaged in the same conduct, i.e., left the meeting early and attempted to return to the meeting only to find that it had concluded, and faced the same punishment, termination. Yet, Quemetco did not terminate Burdine; rather Quemetco allowed Burdine to 'change' his story to reflect that he actually did return...." We think that the district court's reasoning here is unassailable. *See id.* at 478 (employee alleging race discrimination satisfied fourth element by presenting evidence that employer treated two non-black employees more favorably);

*Russell v. Bd. of Tr. of the Univ. of Ill.*, 243 F.3d 336, 342 (7th Cir.2001) (female employee alleging sex discrimination satisfied fourth element by presenting evidence that employer treated male employee more favorably).

For similar reasons, we conclude that Morales offered sufficient evidence of pretext to survive summary judgment. Quemetco's proffered reason for firing Morales was that he twice left work early in a one-year period in violation of its rules. But, as discussed above, Morales offered evidence that he and Burdine engaged in the exact same conduct, yet when Quemetco learned that Burdine violated the same rule, Quemetco effectively permitted him to change his story so that he could avoid termination. This differential treatment casts doubt on Quemetco's assertion that it fired Morales because he violated its rules. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Curry*, 270 F.3d at 480; *Russell*, 243 F.3d at 342; *see also Gordon v. United Airlines, Inc.*, 246 F.3d 878, 892 (7th Cir.2001) ("A showing that similarly situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, nondiscriminatory reason for the adverse job action was a pretext for racial discrimination." (internal quotations and citation omitted)).

Quemetco nevertheless asserts that we should only compare Morales to two other white employees who were also disciplined for having left the meeting. We do not find this argument persuasive. These two white employees did not face termination–this was their first offense so they received only written warnings. The relevant comparison here is to Burdine, who like Morales faced termination but only Burdine was permitted to change his story to avoid

termination. Quemetco attempts to distinguish the two by pointing out that the decisions on Morales and the two white employees were made and carried out the day after the violations, while the decision to only reprimand Burdine occurred over a month later, after Rezabek discovered Burdine had left and after an investigation determined Burdine had only lied about not returning to the meeting. While these differing time-lines frame distinguishing features, they do not resolve the unanswered question of whether Burdine's "lie" was concocted to provide Rezabek a way around firing him.

Quemetco alternatively argues on appeal that the district court properly entered summary judgment in its favor because even Morales "does not believe that he was terminated because of his race." Quemetco first cites various excerpts from Morales's deposition, wherein he testified that he believed that his termination might have had something to do with his participation in an EPA investigation of Quemetco. Based on these statements, Quemetco submits, Morales cannot "establish that race was the 'but for' cause of his termination."

Quemetco's argument fails for a number of reasons. First, Quemetco has not fairly characterized Morales's deposition testimony. Morales repeatedly testified that he believed Quemetco fired him because of his race. And merely because Morales may have subjectively believed that Rezabek would not discharge him based on race does not prove that Rezabek in fact did not. Morales can't read Rezabek's mind. Instead, a jury may ultimately need to determine Rezabek's intent. Second, although Quemetco is correct that Morales must prove that his race was the but-for cause of his termination, *see Adreani v. First Colonial Bankshares Corp.,* 154 F.3d 389, 393 (7th Cir.1998); *Umpleby v. Potter & Brumfield, Inc.,* 69 F.3d 209, 214 (7th Cir.1995); *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1113 n. 29 (7th Cir.1992), we believe that by making out a prima facie case and by presenting evidence that Quemetco's asserted reason for discharging him was pretextual, Morales raised a sufficient fact question whether his race was the but-for cause of his termination.

Third, Quemetco's argument rests on the erroneous assumption that "but-for" cause is the equivalent of "sole cause." These concepts are not the same; indeed, in *United States v. Dyer,* 216 F.3d 568, 570 (7th Cir.2000), we described the two concepts as "poles apart." *See also id.* (noting that but-for cause is better termed a "necessary condition"). And, as we have repeatedly held, Morales need not prove that his race was the sole cause of his discharge. *See, e.g., Cengr v. Fusibond Piping Sys., Inc.,* 135 F.3d 445, 451 (7th Cir.1998); *Kralman v. Ill. Dep't of Veterans' Affairs,* 23 F.3d 150, 153 (7th Cir. 1994); *La Montagne v. Am. Convenience Prods., Inc.,* 750 F.2d 1405, 1409 (7th Cir. 1984).

Because Morales has demonstrated a triable issue of fact as to whether his discharge was racially motivated, Rezabek's intent will ultimately be a matter for a jury to decide. The judgment of the district court is REVERSED and the case is REMANDED for further proceedings. Circuit Rule 36 shall apply on remand.